**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
DOROTHY BARNEY,                                        :
                                                       :        **REPORT AND**
                                    **Plaintiff,**     :        <u>**RECOMMENDATION**</u>
                                                       :
        -against-                                      :        **99-CV-823 (DGT)**
                                                       :
**CONSOLIDATED EDISON COMPANY**                        :
**OF NEW YORK,**                                       :
                                                       :
                                    **Defendant.**     :
-------------------------------------------------------------x

GOLD, S., U.S.M.J.:

## INTRODUCTION

Plaintiff Dorothy Barney filed her complaint in this action on February 10, 1999, alleging

that defendant Consolidated Edison Company of New York ("Con Ed") discriminated against her

in violation of Title VII of the Civil Rights Act of 1964, as codified at 42 U.S.C. §§ 2e to 2000e-

17, in violation of the Age Discrimination Act of 1967, as codified at 29 U.S.C. §§ 621 to 634,

and in violation of the Americans with Disabilities Act of 1990, as codified at 42 U.S.C.

§§ 12112 to 12117.  Docket Entry 2.  More than six years later, on February 28, 2005, defendant

moved to dismiss the complaint for failure to prosecute and for failure to comply with court

orders.  Memorandum of Law in Support of Defendant's Motion to Dismiss ("Def.'s Mem."),

Docket Entry 83.  In the alternative, defendant sought to close plaintiff's right to take discovery,

to preclude plaintiff's expert from testifying at trial, and to continue plaintiff's deposition.  <u>Id</u>.

The Honorable David G. Trager has referred this motion to me for a report and recommendation.

Docket Entry 87.  I respectfully recommend that defendant's motion to dismiss be granted.

**BACKGROUND**

Plaintiff originally filed her complaint *pro se* on February 10, 1999.  Docket Entry 2.  At the initial conference held on July 2, 1999, I stayed discovery to provide plaintiff an opportunity to obtain counsel.  Docket Entry 17.  In November of 1999, Malik Cutlar, who works with Stephen T. Mitchell, appeared on behalf of plaintiff and discovery began with a deadline of June 30, 2000.  Docket Entry 20.  On January 4, 2000, Mr. Mitchell filed a notice of appearance on behalf of Ms. Barney.  Docket Entry dated Jan. 4, 2000.  Upon application of plaintiff's counsel, the original discovery deadline was extended to November 15, 2000.  Docket Entry 24.

1.      *Plaintiff failed to respond to initial discovery demands.*

By letter dated February 6, 2001, defendant informed the Court that plaintiff failed to comply with discovery demands despite repeated requests.  In particular, Mr. Mitchell failed to answer interrogatories served nine months prior, failed to supply executed authorizations, and failed to provide defendant with EEOC documents plaintiff had promised to provide ten months prior.  Def.'s Letter dated Feb. 6, 2001.[1]  Defendant's counsel, Barbara Jane Carey, noted that, without this missing discovery, she could not proceed with plaintiff's deposition.  Id.  On February 7th, Mr. Mitchell responded that he would provide documents that day.  Pl.'s Letter dated Feb. 7, 2001.  By letter dated February 12, 2001, defendant pointed out that Mr. Mitchell did provide some documents the previous week but they were not responsive to her prior demands.

In light of Mr. Mitchell's lengthy delay in answering discovery demands, I attempted to

---

[1] Letters referenced by date without a Docket Entry number were submitted by counsel to chambers but never filed with the Court.  All are available in the Court's chambers file.

move this case forward by setting specific deadlines for various discovery events.  Docket Entry 28.  At a conference on February 21, 2001, I ordered that plaintiff's deposition would take place on April 30, 2001 and indicated that it could be adjourned only by stipulation filed with the court by April 16, 2001 and for no more than thirty days.  Id.  In addition, I ordered plaintiff's counsel to serve notices for all depositions he intended to take by April 2, 2001, for the notices to schedule the depositions during the same week as Ms. Barney's, subject to adjournment only under the same circumstances as Ms. Barney's deposition.  Id.  At this conference, Mr. Mitchell indicated that he did not anticipate calling any expert witnesses at trial.  Id.

2.    *Plaintiff failed to take discovery on the dates ordered by the court in February, 2001.*

In violation of my February 21, 2001 ruling, plaintiff asked to move Ms. Barney's deposition back one day only three days before her scheduled deposition.  Pl.'s Letter dated Apr. 27, 2001.  Mr. Mitchell later agreed to proceed with Ms. Barney's deposition as scheduled.  Pl.'s Second Letter of Apr. 27, 2001.  At this time, Ms. Carey asserted that Mr. Mitchell never served deposition notices as required by my February 21st order.  Def.'s Letter dated Apr. 27, 2001.  Mr. Mitchell responded that he mailed deposition notices by the required date, as well as interrogatories and document requests, to which defendant had not responded.  Id.  At a telephone conference on April 27th, I directed defendant to respond to the discovery demands within three weeks.  Docket Entry 29.  I also scheduled several depositions and ruled that unavailability of counsel would not be grounds for adjourning these depositions.  Id.  I set June, 2001 as the new deadline for discovery.  Id.

3.    *Discovery remained incomplete six months after the adjourned deadline of June, 2001.*

The discovery deadline was subsequently extended several more times over the course of

the following year.  Docket Entries 30-34 and Endorsed Orders.  At a conference on December

19, 2001, plaintiff indicated his intention to call non-party witnesses at trial.  I ordered Mr.

Mitchell to identify those witnesses by January 4, 2002.  Docket Entry 33.  Plaintiff had also now

decided she would seek to offer expert testimony at trial.  I set February 8, 2002 as the deadline

for plaintiff's expert reports, and extended the discovery deadline to April 19, 2002.  Id.

4.     *Plaintiff failed to meet the April 19, 2002 deadline and preclusion sanctions were
       imposed.*

       At a conference on April 25, 2002, upon learning that plaintiff had not produced her

expert reports by February 8, 2002 as I had previously ordered, I ruled that plaintiff would be

precluded from introducing any expert medical testimony at trial.  Docket Entry 35.  I further

ordered plaintiff to produce any accounting expert report on pain of preclusion by July 15, 2002.

Id.  The parties had agreed on dates for several depositions to occur during May and June of 2002

and I ruled that those depositions could proceed.  Docket Entries 34, 35.  In light of the repeated

extensions of the discovery deadline I had already granted, however, I ruled that failure of the

noticing party to proceed would constitute a waiver of the right to conduct the deposition and that

any failure of the noticed party to appear for a deposition might result in sanctions, including

dismissal or default.  Docket Entry 35.

5.     *Plaintiff again failed to complete depositions during May and June of 2002.*

       Despite my April 25th rulings, the depositions did not go forward as scheduled.

Defendant wrote to the court in May concerning Mr. Mitchell's cancellation of the previously-

scheduled deposition dates and his refusal to set new ones.  Def.'s Letter dated May 29, 2002.  In

her letter, Ms. Carey noted that she made calls and sent letters to Mr. Mitchell over the course of

the preceding month with no response.  Id.  Again I granted Mr. Mitchell additional time to

reschedule depositions.  See Docket Entry 36.  During a telephone conference with the parties on

June 3rd, I ordered two depositions to proceed during June and directed the parties to confer and

advise my chambers within two days of dates set for the depositions of three remaining witnesses

named Watkins, Correa, and Austin.  Docket Entry 36.  On June 10th, Ms. Carey wrote to the

Court stating that Mr. Mitchell had not contacted her to schedule the depositions.  Docket Entry

37.  Again I intervened and set specific dates in July and September for the depositions.  Docket

Entry 38.  I warned plaintiff that failure to proceed with the depositions of the three witnesses in

issue would result in an order precluding them from testifying at trial.  Id.

6.     *Plaintiff failed to proceed with Court-ordered depositions during the summer of 2002,*
       *despite my preclusion warning.*

Mr. Mitchell failed to take the July and September depositions as scheduled.  Three days

before the first scheduled deposition, the deposition of Watkins, Mr. Mitchell wrote to the Court

indicating that he had transposed the witnesses and their deposition dates and wished to change

the schedule.  Docket Entry 39.  I urged the parties to work together to reschedule the Watkins

deposition and ordered the second deposition to proceed as previously scheduled.  Order

endorsed on Pl.'s Letter dated July 8, 2002, Docket Entry 39.  The day before the second

deposition, Mr. Mitchell wrote to inform the Court that he was withdrawing the witness, Correa.[2]

_____

[2] As discussed below, in April of 2004, plaintiff sent a letter to United States District
Judge David G. Trager seeking to offer Correa and Watkins "and other witnesses [who were
deposed] in the Perez [v. Consolidated Edison Co. of New York] case" as witnesses at trial,
stating that they were not able to be deposed during the discovery period.  Pl.'s Letter dated Apr.
2, 2004, Docket Entry 76.  The Correa and Watkins depositions were court-ordered at the June
21, 2002 conference on pain of preclusion.  Mr. Mitchell cancelled both of these depositions at
the last minute.  Moreover, Mr. Mitchell was on notice of Correa as a potential witness even
before he began representing Ms. Barney.  Indeed, Mr. Mitchell represented Correa in her own

Pl.'s Letter dated July 17, 2002. By letter dated August 6, 2002, Mr. Mitchell wrote to the Court stating that the third deposition – the deposition of Austin – would not be able to go forward as scheduled the following month due to a scheduling conflict on his part. Docket Entry 40. I granted Mr. Mitchell additional time to depose Austin. Mr. Mitchell also indicated that there were three individuals not previously identified whom he wished to depose. Id.

During a telephone conference on August 12, 2002, I granted plaintiff additional time yet again and ordered that all remaining depositions needed to be held before September 24, 2002. I directed the parties to provide me with a schedule specifying the date for each remaining deposition by September 10, 2002. Docket Entry 41. By letter dated September 10th, defendant's counsel informed me that her efforts to speak with Mr. Mitchell to coordinate deposition dates had, like before, been unsuccessful. Docket Entry 42. On September 20th, Ms. Carey wrote to the Court yet again concerning her inability to speak to Mr. Mitchell to schedule depositions. As I had several times before, I intervened and afforded plaintiff additional time. At a previously scheduled conference on October 8th, I set dates for depositions of various witnesses, including – despite my prior warnings of preclusion – Austin. Docket Entry 43. I again warned that sanctions would be imposed for failure to proceed. Id. I set a new date for plaintiff's economic expert report and ordered that all expert depositions be completed by January 15, 2003. Id.

7.    *Plaintiff failed to comply with the discovery deadlines set on October 8, 2002.*

During the conference on October 8th, I directed that the deposition of a witness named

------

litigation against Con Ed. Correa v. Consolidated Edison Co. of New York, 98-CV-4450 (JG) (E.D.N.Y.). If Judge Trager does not adopt my recommendation to dismiss this case, I respectfully recommend that plaintiff be precluded from calling Correa, Watkins, or any other Perez witnesses at trial.

Donohue proceed on October 18th.  This direction was made subject to the warnings described in the preceding paragraph.  Nevertheless, on October 17, 2002, Mr. Mitchell requested an adjournment of the court-ordered deposition of Donohue scheduled for the following day.  Docket Entry 45.  I denied that request based on Mr. Mitchell's repeated requests for extensions and cancellations of depositions and held that plaintiff's right to take the Donohue deposition had now been waived.  Id.

In a letter dated December 2, 2002, defendant informed the Court of a number of discovery deficiencies by plaintiff.  Specifically, defendant alleged that Mr. Mitchell 1) failed to produce a plaintiff's witness on a court-ordered deposition date and failed to take a deposition of a defense witness; 2) failed to comply with an aspect of my order of October 8, 2002 directing plaintiff to provide Ms. Carey updated information concerning plaintiff's medical doctors; 3) failed to provide authorizations for defendant to obtain the records of two medical practitioners newly identified by plaintiff; 4) failed to provide an expert report by plaintiff's expert economist, Dr. Frank Tinari, by the court-ordered date of  November 8th, or even by December 2, 2002 (the date of defendant's letter); 5) failed to comply with an April 25th order to reimburse defendant's expenses for a deposition that plaintiff cancelled without notice; and 6) failed to provide defendant with deposition transcripts.  In response, Mr. Mitchell disputed some of these failures and indicated that he intended to cure any deficiencies forthwith.  Pl.'s Letter dated Dec. 3, 2002.  In particular, Mr. Mitchell stated that he would provide the Tinari expert report by December 20, 2002, writing that "Dr. Tinari can provide the report by that date and be available in early January for deposition."  Id. at 2.

8. *Although granted additional time yet again, plaintiff failed to complete discovery by the deadlines set at the final discovery conference on December 20, 2002.*

I held yet another conference on December 20, 2002. At that time, I granted Mr. Mitchell additional time to complete expert discovery, set specific dates for the depositions of certain remaining fact witnesses, and ruled that discovery was otherwise closed. Docket Entry 49. During the course of the conference, I expressed my frustration with plaintiff's counsel and issued certain rulings. First, I noted that "deadlines come and go, dates get scheduled and they're missed with regularity" by plaintiff. Tr. of Dec. 20, 2002, Docket Entry 49, at 3. Mr. Mitchell conceded that his is a "small firm and [he] do[es]n't always make deadlines." Id. at 11. He acknowledged that his economic expert's report was overdue, that an order to produce the report by mid-January would give him "more than enough time," and that preclusion would be appropriate if he failed to meet that deadline. Id. at 11-12. I ordered the report produced by January 10, 2003 on pain of preclusion. Id. at 14-15. I again ordered Mr. Mitchell to pay the expenses defendant incurred when Mr. Mitchell failed to appear for a scheduled deposition, and directed that the amount would double if the payment was not made by January 1, 2003. Id. at 16. Despite his failure to complete previously-requested discovery in a timely fashion, Mr. Mitchell made an application to take additional discovery at this conference. Id. at 23-27. I denied that request based on plaintiff's history of non-compliance with court-ordered discovery schedules and ordered discovery closed, except for that which had already been scheduled. Id. at 27-28. Citing a number of specific instances, I noted that the "vast majority of these deadline problems and scheduling problems were the result of plaintiff's failure to comply with court-ordered deadlines." Id.

8

By letter dated February 24, 2003 defendant wrote to the Court concerning plaintiff's failure to comply with my December 20th rulings. Specifically, Ms. Carey asserted that Mr. Mitchell 1) failed to reimburse defendant for deposition costs by the date I had ordered, 2) failed to deliver a complete set of deposition transcripts timely, 3) failed to produce a complete expert report from Dr. Tinari, plaintiff's economist, by the January 10, 2003 deadline or to produce Tinari for deposition on the scheduled date, and 4) failed to provide updated information concerning plaintiff's medical providers. I subsequently ordered Mr. Mitchell to pay double the deposition reimbursement expenses because he failed to remit payment timely to defendant as required by my December 20th ruling. Tr. of Mar. 14, 2003, Docket Entry 67, at 20.

9.      *Upon plaintiff's appeal of my discovery rulings, Judge Trager granted plaintiff additional time, but plaintiff again failed to make disclosures required by the Court.*

On February 28, 2003, plaintiff filed objections to my December 20, 2002 discovery orders pursuant to Federal Rule of Civil Procedure 72. Docket Entry 56. United States District Judge David G. Trager heard argument on plaintiff's objections and concluded that my rulings were "certainly within [my] discretion" and "clearly . . . proper." Tr. of Apr. 11, 2003, Docket Entry 68, at 3, 10. Although plaintiff contended that the events of September 11, 2001 were a significant factor in his missed deadlines and delays, Docket Entry 56, the record reflects that discovery was extended in the months following September 11th, granting the parties at first an additional five months to April 19, 2002, and ultimately until December 20, 2002. Docket Entries 32, 33, 48. Finally, as Judge Trager noted during oral argument on plaintiff's motion, plaintiff failed to comply with court orders on four occasions prior to September 11, 2001. Tr. of Apr. 11, 2003, Docket Entry 68, at 6.

Nevertheless, Judge Trager granted plaintiff until June 17, 2003 to provide defendant with certain additional documents and information concerning her economic expert, Tinari. Id. at 32. Judge Trager also affirmed my March 14th order doubling the deposition costs, imposed as a sanction, with the caveat that Mr. Mitchell did not have to pay the additional doubled amount if he fully responded to all of the outstanding document demands by June 17th. Id. at 35. Lastly, Judge Trager warned he was "not going to let this thing drag out much longer. . . . If [Mr. Mitchell] hasn't [produced the requested documents] by June 17th, you can assume that he will walk away. . . . [To Mr. Mitchell:] [t]his is your last shot." Id. at 30, 32.

Judge Trager held another conference with counsel on June 17, 2003. At that time, defendant reported to the Court that Mr. Mitchell had failed to provide all of the outstanding discovery required by the Court. On May 5, 2003, plaintiff did produce some additional discovery materials. Pl.'s Letter dated May 5, 2003, Docket Entry 69. However, as defendant pointed out, Tinari's expert report failed to provide full case names and docket numbers when listing the prior cases in which Tinari had testified. Tr. of June 17, 2003, Docket Entry 78, at 11-15. Although Mr. Mitchell argued that he should not be required to provide the information because Tinari did not have it, Judge Trager ordered Mr. Mitchell to provide the full names of the clients on whose behalf Tinari testified. Id. at 14-15. Lastly, Judge Trager ordered Mr. Mitchell to provide all outstanding discovery and denied Mr. Mitchell's application for additional discovery until plaintiff's own discovery obligations were fulfilled. Id. at 23.

10.    *Plaintiff failed to move the case forward from June, 2003 to February, 2005.*

Following the June, 2003 conference, this case failed to progress any further. No activity is reflected in the Court's records until March 11, 2004, when Mr. Mitchell wrote to Judge

Trager requesting that he be permitted to proceed with discovery. Docket Entry 74. In response, Ms. Carey asserted that she still had not received all outstanding discovery, including in particular the case names for the Tinari report and certain tax returns that Judge Trager ordered plaintiff to produce at the April and June conferences the prior year. Docket Entry 75. At this juncture, plaintiff's counsel asked to be relieved of his obligation to provide the case names for the Tinari report, arguing that doing so was too burdensome. Docket Entry 76. Additionally, Mr. Mitchell requested that he be allowed to present at trial the testimony of Correa and Watkins, even though he had long ago failed to comply with court-ordered dates for their depositions which were set on pain of preclusion. Id. Indeed, Mr. Mitchell had represented he would *not* seek to call Correa as a trial witness when he cancelled Correa's deposition the day before it was scheduled to proceed. Id. Plaintiff also sought leave to present the testimony of unnamed "other witnesses" who were never previously identified in this case but apparently were deposed in another discrimination case against Con Ed brought by a plaintiff named Perez. Id.

Even after plaintiff's informal letters to Judge Trager went unanswered by the Court, plaintiff failed to make any type of formal motion for relief. On November 19, 2004, I scheduled a conference for the following month to determine the status of the case. Docket Entry 79. In a letter to the Court dated December 13, 2004, Ms. Carey indicated that she had not heard from plaintiff since the June, 2003 conference, almost eighteen months prior, except for the two letters to the Court received eight months earlier. During the status conference held on December 20, 2004, counsel for defendant asserted that she never received signed authorizations for tax returns from plaintiff despite having sent authorization forms over a year ago. Tr. of Dec. 20, 2004, Docket Entry 81, at 4. Mr. Mitchell responded that plaintiff sent the authorizations to defendant

and he did not hear any further from defendant concerning the tax documents. Id. at 5. Ms.

Carey also stated that she never received the additional information concerning Dr. Tinari's prior

cases. Id. Mr. Mitchell acknowledged that he had not provided the additional information

ordered by Judge Trager, but reaffirmed his statement that Dr. Tinari did not have the

information. Id. at 5-6. Based on plaintiff's repeated failures to comply with court orders to

move this case forward and the burdens and expense imposed on defendant as a result, I granted

defendant leave to file a motion to dismiss for failure to prosecute or, in the alternative, a motion

to preclude certain discovery and evidence at trial. Id. at 6-7. As of February 28, 2005, the date

defendant filed its motion to dismiss, defendant still had not received plaintiff's federal tax

documents or the completed expert report.[3]

## DISCUSSION

*A.* *Dismissal*

The Federal Rules of Civil Procedure provide for dismissal of an action where a party

fails to obey a pretrial scheduling order or fails to obey an order to provide discovery. See Fed.

R. Civ. P. 16(f); Fed. R. Civ. P. 37(b)(2); Fed. R. Civ. P. 41(b). Similarly, under Federal Rule

41(b), a defendant may move to dismiss an action or claim "[f]or failure of the plaintiff to

---

[3] By letter dated January 19, 2005, plaintiff provided defendant with tax "transcripts" and indicated that she would forward copies of the actual submissions once she received them. According to the submissions attached to the January 19th letter, Mr. Mitchell requested the transcripts December 28, 2004. I note that Mr. Mitchell apparently did not make the request to the Internal Revenue Service until almost six years into discovery, even though plaintiff's claim included economic damages and his economic damages expert apparently reviewed plaintiff's tax returns. As of March of 2006, plaintiff still had not provided any additional tax documents to defendant. Docket Entry 88. Although plaintiff did produce some additional tax documents on March 29, 2006, defendant continues to assert that these documents are insufficient because they are not copies of official IRS tax returns and many were not signed by Ms. Barney. Docket Entries 90, 91.

prosecute or to comply with these rules or any order of court." Failure to prosecute "can evidence itself either in an action lying dormant with no significant activity to move it or in a pattern of dilatory tactics," which may consist of "repeated requests for continuances or persistent late filings of court ordered papers." Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 42 (2d Cir. 1982).

Dismissal is an extreme remedy and warranted only under the most egregious circumstances. See Minnette v. Time Warner, 997 F.2d 1023, 1027 (2d Cir. 1993). In severe cases, however, dismissal may be appropriate not only to penalize an attorney who conducts himself in a dilatory manner but also to deter other attorneys from similar conduct. Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643, 96 S. Ct. 2778, 2781 (1976). A dismissal triggered by an attorney's actions or inaction imposes a severe consequence on a plaintiff. Nevertheless, the Supreme Court has recognized dismissal as a just sanction for counsel's irresponsible conduct. Link v. Wabash R.R. Co., 370 U.S. 626, 633-34, 82 S. Ct. 1386, 1390 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.").

The Second Circuit has set forth five factors to be considered when determining whether the circumstances of a particular case warrant the severe sanction of dismissal under Rule 41(b):

> (1) the duration of plaintiff's failures; (2) whether plaintiff had received notice that further delays would result in dismissal; (3) whether defendant is likely to be prejudiced by further delay; (4) whether the district judge has carefully balanced the need to alleviate court calendar congestion and a party's right to due process; and (5) whether the court has assessed the efficacy of lesser sanctions.

Peart v. City of New York, 992 F.2d 458, 461 (2d Cir. 1993), quoting Romandette v. Weetabix

13

Co., Inc., 807 F.2d 309, 312 (2d Cir. 1986).  No one factor is dispositive, and the appropriateness

of dismissal must be viewed in light of the record as a whole.[4]  Drake v. Norden Sys., Inc., 375

F.3d 248, 254 (2d Cir. 2004) .

      *1.     Duration of Plaintiff's Failures*

     This factor consists of two parts: a) whether the delay was caused by plaintiff and b)

whether the delay was of significant duration.  See Martens v. Thomann, 273 F.3d 159, 180 (2d

Cir. 2001).

     The record amply demonstrates that plaintiff was the cause of extensive delays in this

case.  The discovery deadline was extended several times to give plaintiff additional time to

complete discovery.  Plaintiff requested the first discovery extension on June 15, 2000.  Docket

Entry 24.  Three months after the November, 2000 deadline passed, the discovery deadline was

adjourned without date after defendant notified me that plaintiff had failed to answer

interrogatories served nine months ealier.[5]  Def.'s Letter dated Feb. 6, 2001.  The discovery

extension on June 1, 2001 was granted to provide plaintiff additional time to depose witnesses.

---

[4] Moreover, a court may consider the merits of the action when determining whether
dismissal is appropriate.  See Dosunmu v. U.S., 361 F. Supp. 2d 93, 99-100 (E.D.N.Y. 2005).
Although I do not give it much weight, I briefly note that defendant has raised a serious question
as to whether plaintiff's claim for damages has merit.  Def.'s Mem. p. 5.  Plaintiff was
discharged from Con Ed on September 10, 1998.  Defendant has apparently developed evidence
that Ms. Barney began receiving Social Security disability benefits based on a claim that she was
unable to work because of a disabling condition beginning September 10, 1998.  See Tr. of Mar.
14, 2003, at 7-11.  It seems unlikely that plaintiff could receive damages for lost pay and pension
benefits in this case, arguing that she could have continued working at Con Ed, and could at the
same time receive Social Security benefits by claiming that she could no longer work due to a
disability during the same time period.

[5] Absent a court order or stipulation to the contrary, interrogatory answers are due thirty
days after the service of the interrogatories.  FED. R. CIV. P. 33(b)(3).

Docket Entry 30. Mr. Mitchell requested the seventh discovery extension on April 22, 2002, three days after the discovery cut-off date. Docket Entry 32.

Plaintiff was repeatedly granted substantial discovery extensions but to no avail in actually completing discovery in an efficient and expeditious manner. From February of 2001 to April of 2003, depositions repeatedly failed to go forward due to Mr. Mitchell's scheduling conflicts and other failures. The record reflects the following delays, among others, caused by Mr. Mitchell:

- Def.'s Letter dated Feb. 6, 2001 (noting that Mr. Mitchell's failure to provide discovery was delaying the taking of plaintiff's deposition)

- Pl.'s Letter dated Apr. 22, 2002, Docket Entry 34 (noting that Mr. Mitchell failed to appear for a deposition),

- Def.'s Letter dated May 29, 2002 (noting that Mr. Mitchell cancelled two scheduled deposition days only two days prior to the first scheduled date and failed to commit to dates for remaining depositions)

- Docket Entry 36 (scheduling by the Court of deposition dates),

- Docket Entry 38 (same),

- Pl.'s Letter dated July 11, 2002, Docket Entry 39 (requesting to change the deposition schedule three days before the first scheduled deposition because he had transposed deposition dates and witnesses),

- Pl.'s Letter dated July 17, 2002 (withdrawing witness the day before the scheduled deposition)

- Pl.'s Letter dated Aug. 6, 2002 (cancelling a deposition due to Mr. Mitchell's unavailability and notifying the Court and defendant of three new witnesses to be deposed),

- Def.'s Letter dated Sept. 10, 2002 (informing the Court that defendant had not been able to speak to Mr. Mitchell to schedule depositions)

- Def.'s Letter Sept. 20, 2002 (same),

- Docket Entry 43 (scheduling by the Court of deposition dates),

- Def.'s Letter dated Dec. 2, 2002 (reporting that Mr. Mitchell failed to produce a witness for deposition and failed to take a deposition),

- Tr. of Dec. 20, 2002, Docket Entry 49, at 16 (noting that the Austin

15

deposition had been rescheduled numerous times and that plaintiff's expert report was past due)

and

• Docket Entry 55 (requesting additional time to produce expert for deposition when the deadline for the deposition was the following day and the scheduled date for the deposition was three days earlier).

Although many of plaintiff's requests were made at the eleventh hour or even after the deadline had passed, I granted nearly every one of Mr. Mitchell's applications for additional time. See, e.g., Docket Entries 24, 30, 34, 35, 40, 41, 48, 55. But see Docket Entry 45 (denying plaintiff's application to adjourn the court-ordered deposition scheduled for the following day) and Tr. of Dec. 20, 2002, Docket Entry 49, at 27 (denying plaintiff's application to take additional discovery and closing discovery). In sum, the record clearly reflects that Mr. Mitchell was the cause of significant delay.

In contrast, defendant contributed minimally to the delays. It is true that some of the discovery extensions were requested or at least consented to by defendant. See Def.'s Letter dated Nov. 16, 2000; Docket Entries 31, 32, 42. I note that these extensions were early in the case and were minor and isolated incidents. At least one of defendant's requests for an extension was necessitated by plaintiff's failure to comply with discovery demands and orders. See, e.g., Def.'s Letter dated Sept. 10, 2002, Docket Entry 42. Mr. Mitchell, of course, evidenced a serious "pattern of dilatory tactics" beginning around April of 2002. See, e.g., Docket Entries 34-43, 45, 46, 48, 55, 59. As discussed throughout, plaintiff, not defendant, is substantially at fault for the appreciable delays in this case. See Peart, 992 F.2d at 461 (affirming dismissal after finding plaintiff's counsel's behavior "particularly egregious" for failing to comply with two court orders, even though "both parties in fact were responsible for many delays").

16

Plaintiff's argument that defendant Con Ed contributed to the delay in this case and her reliance on Jackson v. City of New York, 22 F.3d 71 (2d Cir. 1994), is misguided. In Jackson, the Court found "no instance on the record in which the delays were caused solely by the actions of [plaintiff] or her attorney." 22 F.3d at 75. Unlike Jackson, there are numerous instances here where delays were caused solely by plaintiff. In arguing that defendant was also responsible for delays, plaintiff cites only to a single example involving a conference held on April 27, 2001. Plaintiff's Memorandum of Law Opposing Defendant's Motion to Dismiss ("Pl.'s Mem.") p. 7. At this conference, plaintiff contended that defendant failed to provide responses to discovery demands and refused to produce certain witnesses for deposition the following week. Ms. Carey explained, however, that she failed to provide the requested discovery only because she never received plaintiff's discovery demands and deposition notices. Def.'s Letter dated Apr. 27, 2001. See also Tr. of Apr. 11, 2003, Docket Entry 68, at 7-9. Moreover, the April 27, 2001 conference was instigated by Mr. Mitchell's untimely request to adjourn plaintiff's deposition, which was in plain violation of my February 21st order that plaintiff's deposition could not be rescheduled absent stipulation by the parties and notice to the court at least two weeks prior to the deposition. See Pl.'s First Letter of Apr. 27, 2001. Thus, plaintiff's argument that defendant is also responsible for the delays in this case is completely lacking in merit.

The delays caused by plaintiff were also significant in length. The original discovery deadline was June 30, 2000. Two and a half years later, after countless extensions, I ordered discovery finally closed December 20, 2002. At the time the instant motion was filed in February of 2005, this case was six years old. Yet Mr. Mitchell argued then, as he does now, that he still needs additional discovery. See Pl.'s Mem. pp. 8-9; Pl's Letter dated May 11, 2006,

17

Docket Entry 90. If Mr. Mitchell had conducted discovery with any degree of diligence, he would undoubtedly have realized the need for additional discovery much earlier in the case and all discovery could have been completed long ago. I made this point to plaintiff's counsel years ago. See Tr. of Dec. 20, 2002 at 28. Yet even now, this case is not fully discovered.

Moreover, Mr. Mitchell's repeated failures to provide a complete expert report from Dr. Tinari and the tax returns sought by defendant have led to a substantial delay and there is no indication that plaintiff will ever produce the discovery in issue. Mr. Mitchell was first put on notice in February of 2003 that required information from Tinari and various documents concerning his expert report had not been produced. Def.'s Letter dated Feb. 24, 2003. Judge Trager twice ordered plaintiff to perfect Tinari's expert report and provide defendant with her tax returns. Tr. of Apr. 11, 2003 at 30, 32; Tr. of June 17, 2003 at 14-15. As of today's date, plaintiff has still not fully complied with these discovery obligations. Indeed, in a letter dated January 19, 2005, Mr. Mitchell indicated that it would take several months to receive copies of Ms. Barney's tax returns but that he would forward them to Ms. Carey as soon as he received them. As of May 15, 2006, Ms. Carey still has not received the official IRS tax returns. Def.'s Letter dated May 15, 2006, Docket Entry 91, at 1.

Plaintiff's dilatory conduct over several years warrants dismissal. See Lyell Theatre Corp., 682 F.2d at 42-43 (affirming dismissal of case involving two years of inactivity and seven years of dilatory conduct); Drake, 375 F.3d at 255 (finding that delay of seventeen months was "significant" but dismissal not warranted for other reasons); Europacific Asset Mgmt. Corp. v. Tradescape Corp., 2005 WL 3182528, at *6 (S.D.N.Y. Nov. 29, 2005) (noting that courts have frequently found delays of less than two years "unreasonable"). In particular, Mr. Mitchell's

18

nearly complete lack of activity during the eighteen months following the conference before Judge Trager in June, 2003 – a period of inactivity that might still be ongoing had this Court not convened a conference sua sponte – favors dismissal.

## 2. Notice

Plaintiff had ample notice that further delay and failure to comply with orders could result in dismissal of the case. At a conference on April 25, 2002, I warned that failure to produce witnesses for depositions could result in a recommendation of dismissal. The depositions did not go forward as scheduled, yet I granted Mr. Mitchell additional time to complete discovery. At the April 25, 2003 conference, Judge Trager indicated that dismissal for failure to prosecute would be appropriate if Mr. Mitchell did not provide the requested documents by June 17, 2003. See Tr. of Apr. 11, 2003, Docket Entry 68, at 32 ("If [Mr. Mitchell] hasn't [produced the requested documents] by June 17th, you [defendant's attorney] can assume that he [plaintiff's attorney] will walk away. . . . This is your last shot."). These warnings from the Court were sufficient to put plaintiff on notice dismissal for failure to prosecute would follow if Mr. Mitchell failed to comply with discovery demands and orders and caused further delay.[6] See Link, 370

---

[6] Mr. Mitchell is only too familiar with the sanctions of preclusion and dismissal under Federal Rules 37 and 41. See, e.g., Smalls v. Port Auth. of New York and New Jersey, 120 Fed. Appx. 396 (2d Cir. 2005) (involving same plaintiff's counsel and affirming dismissal for failure to prosecute); Waters v. New York Univ. Med. Ctr., 04-CV-3174 (ERK) (E.D.N.Y. June 30, 2006) (dismissing action for failure to prosecute and to comply with court orders after warning Mr. Mitchell twice that he risked dismissal); Moore v. Consolidated Edison Co. of New York, CV-00-7384 (PAC) (March 8, 2006) (granting same plaintiff's counsel additional time to complete interrogatory responses after outlining plaintiff's extensive delays and extension requests, sanctioning Mr. Mitchell in the amount of $500 for the most recent delay, and warning plaintiff's counsel that future untimely submissions may lead to dismissal); Butler v. Acosta, CV-01-4347 (CBA) (E.D.N.Y. July 16, 2003) (dismissing case for failure to prosecute with same plaintiff's attorney); Carr v. Queens-Long Island Med. Group, P.C., 2003 WL 169793 (S.D.N.Y.

U.S. at 632-33, 82 S. Ct. at 1389-90 (noting that a Rule 41(b) dismissal does not require prior notice or a hearing); <u>Jackson</u>, 22 F.3d at 75-76 (suggesting that one warning may be sufficient to provide notice, depending upon the circumstances of the case).

Moreover, defendant also put Mr. Mitchell on notice of the risk of dismissal for failure to prosecute. Defendant first requested that the case be dismissed for plaintiff's failure to comply with discovery orders in June of 2002. Def.'s Letter dated June 10, 2002, Docket Entry 37. In February of 2003, defendant again requested that this case be dismissed for discovery violations. Def.'s Letter dated Feb. 24, 2003. And clearly, Mr. Mitchell was put on notice at the December 20, 2004 conference where I granted defendant's leave to file the instant motion. Finally, he was put on notice when defendant filed the instant motion. <u>See</u> <u>Stoenescu v. Jablonsky</u>, 162 F.R.D. 268, 271 (S.D.N.Y. 1995) (filing of motion to dismiss put plaintiff on notice). Yet he has not, even to this date, complied with all outstanding discovery orders.

In short, Mr. Mitchell has been on notice for at least three years that this case was at risk of dismissal. If he had provided the documents and information as ordered by the Court at any time over the course of the last three years, dismissal might indeed be too harsh a sanction. Mr. Mitchell, however, has failed to take the necessary steps to avoid dismissal, despite ample opportunity to do so. <u>Cf</u>. <u>Drake</u>, 375 F.3d at 255-56 (finding <i>inter alia</i> that the district court abused its discretion in dismissing the case because plaintiff had no opportunity to cure the deficiency prior to dismissal). In sum, plaintiff has repeatedly refused to comply with court

---

Jan. 24, 2003) (finding a "pattern of disregard for discovery obligations" and sanctioning Mr. Mitchell the expenses incurred by defendants in their contempt motion); <u>Evans v. Port Auth. of New York and New Jersey</u>, 201 F.R.D. 96 (S.D.N.Y. 2001) (precluding same plaintiff's counsel from offering any evidence from 75 persons belatedly identified).

orders even after notice that this case might be dismissed. This factor weighs in favor of dismissal.

   3.   *Prejudice*

"Prejudice may be presumed as a matter of law . . . [depending] on the degree to which the delay was lengthy and inexcusable." <u>Drake</u>, 375 F.3d at 256. <u>See also</u> <u>Lyell Theatre Corp.</u>, 682 F.2d at 43 ("[I]n cases where delay is more moderate or excusable, the need to show actual prejudice is proportionally greater."). Plaintiff's "pattern of dilatory tactics" in this case has led to years of delay and a case that is still not fully discovered.

The delay was also inexcusable. I find unacceptable Mr. Mitchell's routine attempts to excuse his non-compliance by claiming he has made scheduling errors and cannot meet deadlines because he is a solo practitioner. <u>See</u>, <u>e.g.</u>, Docket Entries 39, 40; Tr. of Dec. 20, 2002 at 11; Tr. of Apr. 11, 2003 at 3. And there is simply no excuse for his failure to communicate with opposing counsel to schedule depositions. <u>See</u> Def.'s Letters dated May 29, 2002 and Sept. 20, 2002; Docket Entries 37, 42. Lastly, plaintiff's only argument for the delay in not providing the expert discovery is that he should be relieved of his obligation to do so because it is a burdensome request. Pl.'s Mem. p. 2. Judge Trager implicitly rejected this argument, as do I. <u>See</u> discussion *infra* pp. 23-25. In sum, the lengthy and inexcusable delay in this case leads to a presumption of prejudice.

Moreover, the Second Circuit has noted that defendants "have an interest in prompt resolution of suits in which they have been named, particularly where . . . racial bias is alleged." <u>Copeland v. Rosen</u>, 194 F.R.D. 127, 132 (S.D.N.Y. 2000) ("<u>Copeland I</u>"), remanded by 25 Fed.

Appx. 17 (2d Cir. 2001), after remand Copeland v. Rosen, 208 F.R.D. 507 (S.D.N.Y. 2002)

("Copeland II").  As in Copeland, Con Ed has a significant interest here in prompt resolution of

this case, in which racial bias and other forms of discrimination have been alleged.

Furthermore, defendant has been prejudiced in fact.  Defendant notes that two of the Con

Ed employees involved in this litigation have since retired and now reside out of state.  Def.'s

Mem. p. 7.  Moreover, the events underlying this litigation occurred six to ten years ago and

undoubtedly memories have faded and documents have been lost.  Id.  See Shannon v. Gen. Elec.

Co., 186 F.3d 186, 194-95 (2d Cir. 1999) (finding a substantial likelihood that evidence had

become unavailable and witnesses' recollections had diminished because the events occurred

more than a decade before dismissal); White v. Mitchell, 2005 WL 775899, at *3 (E.D.N.Y. Apr.

6, 2005) (finding prejudice where the events occurred over five years prior to the dismissal).  In

addition, plaintiff's delays and failures to abide by court orders have caused defendant to incur

substantial legal fees, particularly as a result of preparing for depositions that failed to proceed as

scheduled, making repeated applications to the court, and attending numerous court conferences.

See LeSane v. Hall's Sec. Analyst, Inc., 239 F.3d 206, 210 (2d Cir. 2001) (recognizing that

prejudice includes increased litigation costs); Peart, 992 F.2d at 462 (finding prejudice where,

inter alia, a party expends time and money preparing a case).  Indeed, a careful review of the

docket sheet in this action reveals that, as a result of plaintiff's conduct, defendant was required

to submit at least seventeen discovery letters[7] and to attend at least the same number of court

---

[7] Docket Entries 37, 42, 54, 60, 70-71, 75, and 77 and letters not docketed dated February
6, 2001, February 12, 2001, April 27, 2001, May 29, 2002, July 8, 2002, September 20, 2002,
December 2, 2002, December 4, 2002, February 24, 2003, and March 10, 2003.

conferences.[8]  In contrast, a typical case of this magnitude might reasonably be expected to require two or three discovery letters and three or four court conferences.  Moreover, the activity on the docket sheet does not, of course, reflect the many phone calls and letters Ms. Carey exchanged with Mr. Mitchell attempting to move discovery forward.

Defendant has also been prejudiced in preparing to defend against plaintiff's economic expert.  Mr. Mitchell first notified defendant that he had retained Dr. Tinari on September 18, 2002 – three and a half years into this litigation and seven months after the original deadline for producing expert reports had expired.  Def.'s Letter dated Sept. 20, 2002, at 2; Docket Entry 33. I then set a new deadline of November 8, 2002 for Dr. Tinari's report.  See Docket Entry 43. When even that deadline was missed, I extended the time for Dr. Tinari's report to January 10, 2003, and recommended that Tinari's testimony be precluded if the report were not provided to defendant by that date.  Docket Entry 48.

Plaintiff apparently did provide a report from Tinari on or about January 10, 2003.  See Affirmation of Barbara Jane Carey ("Carey Aff."), Docket Entry 71, ¶ 2 and Ex. 1.  Defendant has contended since the report was initially produced that it was deficient in several respects. One of the deficiencies noted by defendant was that the report did not include any information about other cases in which Tinari had testified as an expert witness.  Such disclosure is, of course, required by Federal Rule of Civil Procedure 26(a)(2)(B).

Apparently in response to defendant's complaints, plaintiff submitted additional

_____

[8] Fourteen of the seventeen conferences were held before me (Docket Entries 18, 20, 27, 28, 29, 30, 33, 35, 36, 38, 41, 43, 45, and 48), and three were held before Judge Trager (Docket Entries 51, 66 and 73).

materials, including some information about Tinari's prior experience as an expert witness, on or about March 10, 2003. Carey Aff. Ex. 3. Even this information – in addition to being provided 60 days after the final date for production of the Tinari report on pain of preclusion – was deficient, in that it listed only the date of the report, the name and telephone number of the attorney for whom it was prepared, the name of the judge and the court where the case was heard, and plaintiff's gender and surname. Id. Courts construing Rule 26(a)(2)(B) have held that

> [t]he identification of 'cases' at a minimum should include the courts or administrative agencies, the names of the parties, the case number, and whether the testimony was by deposition or at trial. Such information should be sufficient to allow a party to review the proceedings to determine whether relevant testimony was given. With this information, a party should be able to determine the type of claim presented and locate any recorded testimony.

Cartier, Inc. v. Four Star Jewelry Creations, Inc., 2003 WL 22227959, *2 (S.D.N.Y. Sept. 26, 2003), citing Nguyen v. IBP, Inc., 162 F.R.D. 675, 682 (D.Kan. 1995). The information provided by plaintiff did not include case numbers or the names of the parties (other than the surname of one party). Although plaintiff has argued that Tinari does not have the necessary information and that it would be unduly burdensome for plaintiff to obtain it, it is the duty of an expert, particularly one who routinely testifies, to keep records that fully comply with Rule 26, and it is counsel's duty to ensure that the expert he retains complies with the Federal Rules. See Doblar v. Unverferth Mfg. Co., Inc., 185 F.R.D. 258, 261-62 (D.S.D. 1999); Elgas v. Colorado Belle Corp., 179 F.R.D. 296, 299-300 (D. Nev. 1998). Moreover, the information plaintiff did produce included the name of each lawyer who had previously retained Tinari as an expert, and there is no reason why Mr. Mitchell could not have contacted those attorneys to obtain the required information.

Defendant emphasized the deficiencies in Tinari's report during oral argument before Judge Trager on April 11, 2003 in connection with plaintiff's objections to my discovery orders. See Tr. of Apr. 11, 2003 at 16-18. Judge Trager ordered plaintiff to provide all of the information requested by defendant, including the list of cases in which Tinari previously testified as an expert, within 30 days, and stated that plaintiff would have to "walk away" if the documents had not been produced by the time of the next conference, which Judge Trager set for June 17, 2003. Id. at 18, 32. On June 17, 2003, upon learning that plaintiff had not provided the additional information about Tinari's prior testimony, Judge Trager ordered plaintiff to provide, at a minimum, the full names of the parties on whose behalf Tinari had testified. Tr. of June 17, 2003 at 14-15. Plaintiff has yet to provide this information and defendant persuasively argues that it has been prejudiced as a result. Defendant's counsel affirms that she "attempted to locate the cases in which [Dr. Tinari] said he had testified, using Westlaw[, but her] search was both unduly lengthy and often fruitless." Affirmation of Barbara Carey in Support of Defendant's Reply, dated Mar. 30, 2005, ¶ 12.

Defendant has also been prejudiced by plaintiff's failure to obtain and provide all of her tax returns.[9] Plaintiff seeks to hold defendant liable in damages for her termination. Defendant argues, among other things, that plaintiff was collecting disability benefits during the period for which she seeks to recover lost wages. Accordingly, plaintiff's income tax returns – which should reflect any income earned or disability benefits received after being terminated by Con Ed

---

[9] There is a factual dispute as to whether plaintiff provided the signed tax authorizations to defendant back in July of 2003. It is clear, however, that defendant advised plaintiff in early 2004 that it had not received the authorizations and that plaintiff did nothing to rectify it. Docket Entry 75.

– are highly relevant to plaintiff's claim for damages. Although plaintiff finally provided tax "transcripts" in January, 2005 containing some income tax information, these documents do not appear to contain all of the details, such as sources of income, one would expect to find on an official tax return. Additionally these documents are not signed by plaintiff and are therefore less useful than tax returns would be both as substantive evidence and for purposes of impeachment.

In sum, plaintiff has failed to negate the presumption of prejudice, and the record demonstrates that defendant has suffered substantial actual prejudice. This factor weighs heavily in favor of dismissal.

### 4. *Balancing Court Congestion and Plaintiff's Due Process Right*

Plaintiff's right to an opportunity to be heard is significant and weighs against dismissal. "There must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court." Lucas v. Miles, 84 F.3d 532, 535-36 (2d Cir. 1996) (dismissal not warranted on *pro se* case pending for twenty-two months), cited in LeSane, 239 F.3d at 210. As noted above, Judge Trager and I have been called upon to resolve a remarkable number of disputes, and to grant extensions countless times, in this relatively straightforward case. Having said this, though, this factor weighs against dismissal because an adjudication on the merits would be preferable.

### 5. *Consideration of Lesser Sanctions*

I have considered but decline to recommend imposing lesser sanctions in this case for two reasons. First, plaintiff has repeatedly failed to comply despite warnings that lesser sanctions would be imposed and even despite the imposition of lesser sanctions. Second, no sanction short

of dismissal would sufficiently redress the prejudice suffered by defendant.

Plaintiff's failures to comply with specific court orders, and in particular those orders that warned of sanctions for failure to comply, may be summarized as follows:

- During a conference held on April 25, 2002, I set court-ordered dates for depositions and warned that failure to take the deposition would constitute a waiver of that discovery and failure to produce a witness would result in sanctions, including dismissal or default. The depositions did not go forward as ordered. At this conference, I also precluded plaintiff from presenting any medical expert testimony at trial because of her failure to produce reports from her medical experts.

- On June 21, 2002, I set court-ordered dates for the depositions of three witnesses – Watkins, Correa, and Austin – and ordered that plaintiff would be precluded from calling those witnesses at trial if he failed to produce them on the scheduled dates. These depositions did not go forward as ordered. Nevertheless, in April of 2004, Mr. Mitchell requested that he be allowed to call as trial witnesses Watkins and Correa, who were never deposed in this litigation. Docket Entry 76.

- On December 20, 2002, I ordered plaintiff to produce his economic expert report by January 10, 2003 on pain of preclusion. Plaintiff failed to provide the complete expert report on time.

- On April 11, 2003, Judge Trager ordered plaintiff to provide certain discovery by June 17, 2003 or "walk away." Mr. Mitchell failed to provide all of the ordered discovery.

- On June 17, 2003, Judge Trager ordered plaintiff to provide the first names of the parties on whose behalf her economic expert previously testified. Plaintiff has failed to provide defendant with any additional information concerning Dr. Tinari's prior testimony.

As summarized above, the Court has warned of and has in fact imposed lesser sanctions, but with no effect upon Mr. Mitchell's willingness to follow this Court's discovery orders. To the contrary, Mr. Mitchell's attitude towards compliance appears unchanged. Moreover, a

cursory review of cases in the Eastern District of New York suggests that Mr. Mitchell has repeatedly received warnings and lesser sanctions over the years with little effect on his responsiveness to directions from the court or his diligence in prosecuting cases on behalf of his clients.[10]  Thus, any sanction short of dismissal would not sufficiently penalize Mr. Mitchell for his serious "pattern of dilatory tactics" in this case and would not likely prompt compliance with the Court's orders.  See, e.g., Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 666 (2d Cir. 1980) (affirming dismissal "given [plaintiff's] complete intransigence in the face of a clear court order"); Copeland II, 208 F.R.D. at 513 (dismissing case after finding "inexcusable delay and indifference" and noting that plaintiff's counsel "continually failed to comply with [court] orders").

　　　In considering lesser sanctions, I am mindful of the Second Circuit's caution to consider whether the party or counsel are at fault and to impose sanctions accordingly.  Dodson v. Runyon, 86 F.3d 37, 40 (2d Cir. 1996).

---

[10] Indeed, a review of cases in this district indicates that Mr. Mitchell's conduct in this case is no aberration.  See, e.g., Reed v. Prospect Gardens, 97-CV-2889 (DGT) (Docket Entry 6) (warning of preclusion if plaintiff's counsel failed to submit timely expert report); Thelusma v. New York City Bd. of Educ., 02-CV-4446 (FB) (Docket Entry 8) (noting a failure to appear at a prior conference, granting discovery extensions and noting that "plaintiff has not proceeded diligently in this case, the fault appears to lie with counsel," sanctioning Mr. Mitchell for failing to appear at his client's deposition, and noting that "plaintiff's counsel has not heeded prior deadlines"); Douglas v. Bovis Lend Lease LMB, Inc., 02-CV-5304 (ARR) (Docket Entry 14) (ordering plaintiff to provide discovery on pain of sanctions); Lloyd v. Interfaith Nutrition Network, 03-CV-178 (ADS) (Docket Entry 18) (ordering plaintiff to produce requested discovery, which was due more than 90 days prior, and warning plaintiff that failure to comply could result in sanctions); Armstrong v. Brookdale Univ. Hosp. and Med. Ctr., 02-CV-5017 (CPS) (Docket Entries 12, 28) (ordering Mr. Mitchell on two separate occasions to show cause why the case should not be dismissed for failure to prosecute); Armstrong (Docket Entry 26) (ordering Mr. Mitchell to show cause why he should not be sanctioned for his failure to comply with a court order to provide releases and his failure to appear at a conference).

> In deciding on the suitability of lesser sanctions and whether the sanctions should be aimed primarily against the party or the attorney, it can be important for the district court to assess the relative roles of attorney and client in causing the delay, as well as whether a tactical benefit was sought by the delay. . . . [T]he more the delay was occasioned by the lawyer's disregard of his obligation toward his client, the more this factor argues in favor of a less drastic sanction imposed directly on the lawyer.

Id. at 40.  In this case, it appears that Mr. Mitchell, and not his client, is the sole cause of the delay.  The Second Circuit, however, did not rule out dismissal even based upon an attorney's actions where those actions cause a defendant significant prejudice.

> [A]t least *absent prejudice*, dismissal for failure to prosecute is inappropriate where the fault clearly lay in the lawyer's failure to attend to his client's business, *and* the court failed to consider alternative sanctions. . . . [W]here opposing parties are found to have been *meaningfully prejudiced* by a plaintiff's delay, this factor speaks strongly in favor of dismissal, and may well override the hardship to plaintiff.

Id. at 40-41 (emphasis added).

Dismissal is warranted in this case because defendant has suffered significant actual prejudice.  See discussion *supra* pp. 21-26.  Cf. Tubner v. West, 1996 WL 1057149, at *7 (E.D.N.Y. Dec. 17, 1996) (finding that plaintiff's lawyer disregarded her professional responsibilities and caused the delay but denying dismissal because case was less than one year old and defendants had not suffered prejudice).  Any other sanction will not adequately redress this prejudice.  As discussed above, there is "no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client."  Link, 370 U.S. at 633, 82 S. Ct. at 1390.  Nevertheless, Mr. Mitchell is hereby ordered to serve a copy of this Report and Recommendation on plaintiff and to provide proof of service to

the Court. In this way, plaintiff herself is put on notice that her case is about to be dismissed and she will have an opportunity to be heard, if she chooses, before Judge Trager decides whether to adopt the recommendations in this report.[11]  See Dodson, 86 F.3d at 40, fn.4.

6.    *Record as a Whole*

In sum, an analysis of the five factors identified in Peart supports dismissal for failure to prosecute.  The record as a whole amply demonstrates Mr. Mitchell's repeated failures to comply with court orders and the significant delays which occurred as a result.  See Lyell, 682 F.2d at 43 (affirming dismissal in case that involved seven years of "commitments not honored, delinquent inactivity, adjournments and delay," including two years of inactivity, and noting that "[w]e have affirmed dismissals in cases far less egregious than this"); Copeland I, 194 F.R.D. at 127 (finding that "dismissal [wa]s warranted by counsel's chronic delays and her disregard for the orders of the Court" over the course of four years); Cognotec Servs. Ltd. v. Morgan Guar. Trust, Co., 1999 WL 627411, at *2 (S.D.N.Y. Aug. 18, 1999) (dismissing case involving five and one-half years of failure to adequately prosecute, including nineteen months of inactivity); Johnson v. M. Melnick & Co., Inc., 1996 WL 239994, at *9 (S.D.N.Y. May 8, 1996) (dismissing case after plaintiff engaged in "a pattern of dilatory tactics" for four years, including the violation of multiple court orders, despite "ample opportunity to remedy his conduct").  Here the record reflects six years of dilatory conduct by plaintiff despite the repeated threat of lesser sanctions

---

[11] By letter dated May 8, 2006, Ms. Barney wrote to the Court inquiring of the status of the motion and stating that "Mr. Mitchell and I have fulfilled all [discovery] requests including sending Con Edison copies of all my tax returns."  Although it is clear that she is aware of the pending motion to dismiss, it does not appear that she is fully aware of the court's past efforts to move this case forward or of the degree to which her own attorney's actions are responsible for the substantial delays.

and even the threat of dismissal. Mr. Mitchell requested and was granted dozens of extensions and adjournments to no avail in completing his discovery, failed to produce witnesses for depositions, failed to appear to take depositions, cancelled depositions at the last minute, failed to communicate with defendant's counsel, and failed to provide an adequate expert report in a timely fashion. Mr. Mitchell's habitual defiance is astounding considering the repeated extensions of time he was given to comply with this Court's orders.

Based on the record as a whole, which clearly demonstrates a serious pattern of discovery violations by plaintiff causing significant delay, I respectfully recommend dismissal for failure to prosecute pursuant to Federal Rule 41(b).

Dismissal would also be an appropriate sanction under Rule 37(b)(2)(C). See Altschuler v. Samsonite Corp., 109 F.R.D. 353, 356 (E.D.N.Y. 1986) (recommending a default judgment pursuant to Rule 37 "because of [defendant's] consistent failure to cooperate in this litigation in good faith and to obey a discovery order of which it had proper notice"). Indeed, courts consider the same factors applicable to Rule 41(b) when considering dismissal pursuant to Rule 37. See Banjo v. United States, 1996 WL 426364, at * 5 (S.D.N.Y. July 30, 1996).

B.     Preclusion

If my recommendation that this case be dismissed is not adopted, I respectfully recommend in the alternative that plaintiff be precluded from calling Dr. Tinari as an expert witness at trial, be precluded from offering expert testimony from any medical doctor or other expert witness, and be precluded from calling Correa, Watkins, or any other fact witness she did not identify and produce for deposition prior to the final discovery conference I held on

December 20, 2002.[12]

In addition, I respectfully recommend 1) that defendant be allowed to re-open plaintiff's deposition for the limited purpose of inquiring about plaintiff's Social Security file, 2) that discovery be otherwise closed 3) that Mr. Mitchell be directed to pay forthwith double the reimbursement amount he untimely paid to defendant, and 4) that defendant be awarded the attorney's fees and costs it incurred making this motion.

## CONCLUSION

For all these reasons, I respectfully recommend that defendant's motion to dismiss be granted. In the alternative, I recommend the lesser sanctions set forth in the two preceding paragraphs.

Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Chambers of the Honorable David G. Trager within ten days of receiving this Report and Recommendation and, in any event, on or before August 7, 2006. In order to give Ms. Barney an opportunity to be heard before her case is dismissed, I direct that Mr. Mitchell provide a copy of this Report to his client and provide proof of service to this Court. Failure to file timely objections may waive the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72; Small v. Secretary of Health & Human Servs.,

---

[12] Federal Rule of Civil Procedure 37(b) provides that
> if a party . . . fails to obey an order to provide or permit discovery, the court. . . may make such orders in regard to the failure as are just, [including] . . . (B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence.

892 F.2d 15, 16 (2d Cir. 1989).

_____/s/_____
**Steven M. Gold**
**United States Magistrate Judge**

**July 19, 2006**
**Brooklyn, New York**